IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SELECT REHABILITATION, LLC, )
)
   Plaintiff, )
)
v. ) Case No.  21-cv-270-RJD
)
ERIK D. PAINTER, PAULA VAZQUEZ, and )
EMPOWERME REHABILITATION )
ILLINOIS, INC., )
)
   Defendants. )

# ORDER

**DALY, Magistrate Judge:**

This matter is before the Court on Defendant Paula Vazquez's Motion to Dismiss Count V of Plaintiff's Second Amended Verified Complaint for Injunctive and Other Relief (Doc. 55). For the reasons set forth below, the Motion is **GRANTED**.

## Background

Plaintiff Select Rehabilitation, LLC ("Select") filed this action on March 9, 2021 alleging Defendants Erik Painter, Paula Vazquez, and EmpowerMe Rehabilitation Illinois, Inc. ("EmpowerMe") breached contractual obligations and/or misappropriated Select's trade secrets.

By way of background, Select is a provider of physical, occupational, and speech therapy services. Painter and Vazquez are former employees of Select, who left Select to work for a competitor, EmpowerMe. In its Second Amended Complaint, Select alleges Painter breached his fiduciary duties and his non-solicitation agreement with Select (and/or its predecessor, RehabCare Group, Inc.), Defendants misappropriated Select's trade secrets under the Illinois Trade Secrets Act, 735 ILCS 1065/1, *et seq.* and the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*,

Page **1** of **7**

Vazquez violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(1), *et seq.*, and EmpowerMe tortiously inferred with Select's contracts and induced Painter's breach of fiduciary duty.

## **Allegations at Issue in Count V**

At issue in Defendant Vazquez's motion to dismiss is Count V, Select's claim that Vazquez violated the Computer Fraud and Abuse Act ("CFAA"). Relevant to Count V, Select alleges Vazquez was a staffing coordinator for Select/RehabCare from approximately January 2019 to December 15, 2020. In her position, Select asserts Vazquez had access to certain confidential information, including its roster of therapists, which set forth their names, addresses, phone numbers, and the facility to which they were assigned, and the average, minimum, and maximum wage rates RehabCare/Select currently paid its therapists and assistant therapists. Select alleges Vazquez gave Select email notice of her resignation on December 6, 2020, effective December 25, 2020. However, Select contends Vazquez was solicited to work for EmpowerMe sometime in early November 2020.

With regard to Vazquez's alleged misappropriation of trade secrets, Select alleges that on or about November 11, 2020, Vazquez accessed Select's personnel information and copied a list of 32 RehabCare/Select therapists available to supply per diem ("PRN") services to patients at various facilities throughout Illinois ("PRN List"). Select alleges that Vazquez then sent the PRN List to her personal email address, in contravention of various Select policies.

Select contends a second occasion of misappropriation occurred on December 5, 2020, the day before Vazquez gave Select email notice of her resignation. On this date, Select contends Vazquez sent an email from her Select account to her personal email address attaching a group of excel spreadsheets entitled "Paula Rates." Select alleges Vazquez created these spreadsheets

using its confidential minimum and maximum compensation rates RehabCare/Select used for its full-time, PRN, and part-time therapists in the States of Illinois, Kentucky, Missouri, Kansas, Nebraska, Oklahoma, North Carolina, Georgia, and Florida.  Select contends Vazquez accessed this information from its computer systems and downloaded it into the spreadsheets before emailing it to herself, in contravention of Select's policies.  Vazquez's "Paula Rates" spreadsheets also include a column entitled "Josh rates" and refers to "EmpowerMe ytd 2021." Select asserts that, on information and belief, this is a reference to EmpowerMe's rates for the same therapy positions, presumably obtained from Josh Stevens, EmpowerMe's owner.

Select asserts that, based on the foregoing, Vazquez intentionally accessed its computer systems to download/transfer trade secrets from Select's computer systems to Vazquez's personal email addresses.  In so doing, Select asserts Vazquez exceeded her authority in accessing Select's computer system for the purpose of downloading/transferring trade secrets for her and/or EmpowerMe's competitive use.  Select alleges it lost more than $5,000 in business as a direct and proximate result of Vazquez's unauthorized use of Select's computer system.  Select asserts this serves as a basis for Count V, wherein it alleges Vazquez violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*

## Discussion

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted.  In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff.  *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotations omitted).  A plaintiff need not set out all relevant facts or recite the law in his or her complaint; however, the plaintiff must provide a short and plain statement that

shows that he or she is entitled to relief.  *See* FED. R. CIV. P. 8(a)(2).  Thus, a complaint will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Generally, the Computer Fraud and Abuse Act ("CFAA") prohibits individuals from illicitly accessing secure computers and damaging the computer or the data.  18 U.S.C. § 1030. Although the CFAA is primarily a criminal statute, it also provides a private right of action for a person "who suffers damage or loss by reason of a [CFAA] violation."  18 U.S.C. § 1030(g). Thus, to survive Vazquez's motion to dismiss, Select must plead that it suffered damage or loss in order to maintain an action under the CFAA.

First, Vazquez argues Select failed to identify the section of the CFAA that it contends gives rise to its cause of action under the CFAA.  Vazquez asserts that although it appears Select is attempting to proceed under the "unauthorized use" provision in 18 U.S.C. § 1030(a)(2)(C), she should not be left guessing as to the basis of Select's claim.

In response to this issue, Select asserts that Vazquez intentionally accessed a computer without authorization and exceeded her authorized access, both of which constitute violations of the CFAA.  18 U.S.C. § 1030(a)(2).  Select asserts Vazquez misled it into believing she was its employee when she had already agreed to work for EmpowerMe; thus, Select argues Vazquez did not have authorization to enter its computers when she accessed the PRN List and Compensation Information.  Further, Select asserts that Vazquez did not have authorization to place a new file on its system that included its competitor's information.

Although Select's Second Amended Complaint does not identify the specific statutory provision it contends gives rise to its cause of action, such identification is not necessary.  Indeed,

the Seventh Circuit makes it clear that "[p]laintiffs need only plead facts, not legal theories, in their complaints."  *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) (citation omitted).  This is consistent with Federal Rule of Civil Procedure 8(a), which only requires a "short and plain statement of the claim."  For these reasons, Vazquez's argument as to this point fails.

Vazquez also asserts Select failed to allege that it suffered damages or loss within the meaning of the CFAA.

"Damage" and "loss" have special statutory meanings under the CFAA.  Specifically, the CFAA defines "damage" as any impairment to the integrity or availability of data, a program, a system, or information.  18 U.S.C. § 1030(e)(8).  "Loss" is defined as any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.  18 U.S.C. § 1030(e)(11).

It is apparent there is (or was) a split in authority as to whether the CFAA's definition of "damage" or "loss" encompasses the loss in value of a plaintiff's trade secrets or the loss in a plaintiff's competitive edge.  Select urges this Court to align itself with those courts that have adopted a broader reading of "loss" or "damage" to include the loss attributable to Vazquez's alleged misuse of Select's trade secrets.  Select cites various cases it purports support its position; however, the Court finds these cases unpersuasive and, in large part, more recent decisions have retreated from this position.  For example, Select cites *George S. May Int'l Co. v. Hostetler*, No. 04-C-1606, 2004 WL 1197395 (N.D. Ill. May 28, 2004), remarking that then-Chief Judge Charles Kocoras found that the removal of copyrighted material from an employer's protected computer

system would qualify as an "impairment to the integrity or availability of data …" within the meaning of 18 U.S.C. § 1030(e)(8). 2004 WL 1197395 at *4. The Court does not find *Hostetler* persuasive as the court in which it was decided has determined it need no longer rely on it. Specifically, in *Garelli Wong & Associates, Inc. v. Nichols*, 551 F.Supp.2d 704 (N.D. Ill. Jan. 16, 2008), Judge Kocoras indicated "reliance [on *Hostetler*] is no longer compelling in light of the statutory amendments and other cases decided post-amendment." The *Garelli* court also indicated it was not inclined to follow *Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F.Supp.2d 1188, 1195 (E.D. Wash. 2003), another case cited by Select. In *Garelli*, the court considered whether the plaintiff had stated a claim under the CFAA against the defendant, its former employee, for using confidential and propriety information obtained from the plaintiff to compete with the plaintiff after taking work with a direct competitor. In rejecting the reasoning of *Hostetler* and *Taylor*, the *Garelli* court specifically found that allegations of trade secret theft and misappropriation do not suggest a violation of the CFAA. 551 F.Supp.2d at 710. With regard to the *Taylor* decision in particular, the *Garelli* court indicated that the conclusion in *Taylor* failed to consider that a civil violation of the CFAA requires "impairment to the integrity or availability of data, a program, a system, or information" and "interruption of service." 18 U.S.C. § 1030.[1]

Select also relies on *C.H. Robinson Worldwide, Inc. v. Command Transportation, LLC*, No. 05-C-3401, 2005 WL 3077998 (N.D. Ill. Nov. 16, 2005). Select asserts that in *C.H. Robinson*, the court found that the plaintiff had properly alleged "loss" under the CFAA based on its allegations of the loss in value of trade secrets and loss of competitive edge. Although the undersigned recognizes this holding, it finds *C.H. Robinson* to be unpersuasive. Notably, in *First*

---

[1] Select also cites *Charles Schwab & Co. v. Carter*, No. 04-C-7071, 2005 WL 351929 (N.D. Ill. Feb. 11, 2005). In a more recent decision, *Medcor, Inc. v. Gaddi*, 2008 WL 11518129 (N.D. Ill. July 8, 2008), the court indicated it found *Carter* unpersuasive and noted that *Carter* failed to quote or analyze the statutory definition of "loss." Thus, the *Gaddi* court specifically declined to follow *Carter*.

*Financial Bank, N.A. v. Bauknecht*, 71 F.Supp.3d 819 (C.D. Ill. Oct. 24, 2014), the court considered the opinion in *C.H. Robinson* and found it not persuasive. The *Bauknecht* court remarked that *C.H. Robinson* did not analyze the statutory definition of loss, and instead relied on outdated authority that interpreted an earlier version of the CFAA that did not define the term.

More generally, the Court finds the cases cited by Select do not reflect "longer standing" or better reasoning; rather, the holdings of the cases have been discredited due to statutory changes and courts' reasoning have evolved to reflect a better understanding of the CFAA.

In this instance, the Court agrees with the reasoning set forth in *Bauknecht*, that "[t]he statute and law are clear: in order to establish loss through lost revenue, a plaintiff must establish an interruption in service." 71 F.Supp.2d at 851. In this instance, there is no allegation there was any interruption in service or any impairment to the integrity or availability of Select's data, program, system, or information. Indeed, Select's damages rests on its allegation that it lost more than $5,000 in business as a direct and proximate result of Vazquez's unauthorized use of Select's computer system. This is insufficient to state a claim under the CFAA.

## Conclusion

Based on the foregoing, Paula Vazquez's Motion to Dismiss Count V of Plaintiff's Second Amended Verified Complaint for Injunctive and Other Relief (Doc. 55) is **GRANTED**. Count V of Plaintiff's Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED: August 24, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**